DICKINSON, Presiding Justice,
for the Court:
¶ 1. The two subscribing witnesses to Lela W. Holmes’s will testified that they did not know they were witnessing a will; that Lela did not request they witness a will; and that they did nothing to satisfy themselves that Lela was of sound and disposing mind when she executed the will. Still, the chancellor admitted the will to probate, and the contestants appealed, raising numerous issues. But, because the two subscribing witnesses did not satisfy the legal requirements of “attesting” witnesses, we reverse the chancery court’s ruling, limiting and focusing our factual recitation and analysis to that issue.
BACKGROUND FACTS AND PROCEDURE
¶ 2. Lela W. Holmes made three wills: one in 2003, which this Court nullified; one in 2002, which a chancery court nullified; and one in 2001 (the ‘Will”), which is before us now.
¶ 3. After Lela died, one of her grandchildren — Bertha Holmes-Price — filed a petition to probate her Will in solemn form. Bertha notified all interested parties of the hearing date, and two of Lela’s children — Walter Lee Holmes Sr. and Ollie Pickett, together with several other family members (“Contestants”)— contested the Will, claiming that the two witnesses — Sue Chawla and Jennifer Delaney — did not meet the statutory requirements for attesting witnesses.

Sue Chawla’s testimony

¶ 4. Sue Chawla identified her signature on the Will and the signature of the other subscribing witness, Jennifer Delaney. She testified that she had signed a proof of will proclaiming that Lela “was then of sound and disposing mind and memory” and that the subscribing witnesses attested the Will “at the special instance and request and in the presence of [Lela],” but she admitted that she signed the proof of will ten years after the Will was executed. And when questioned about the will, she *1152 admitted that Lela never had asked her to witness the Will; instead, it was the other witness, Delaney, who had asked her to sign.
¶ 5. Chawla also admitted that she had never spoken to Lela before the day she signed the will, and she did not actually speak to her when she signed the Will. When asked whether she knew the document she was witnessing was a will, Chaw-la responded: “just by looking at it. You know, I just thought it was some important paper.” But then, Chawla admitted she “did not think [she] knew it was a will.” Chawla acknowledged that the Will had five different handwriting patterns, and she could not identify who wrote the date, “20th June.”

Jennifer Delaney’s testimony

¶ 6. The second witness to the Will, Jennifer Delaney, identified her own signature, Chawla’s signature, and Lela’s signature on the Will. She testified that she believed the notary — as opposed to Lela— had asked her to witness the Will. At first, she testified that she, Chawla, and Lela had signed the Will in each other’s presence, but later admitted that she could not “recollect if Ms. Holmes signed [the Will].”
¶ 7. Delaney admitted that she did not know Lela before that day, that she had no opportunity to observe whether Lela had the ability to understand and appreciate the “effects of her act” of signing the will, and that she did nothing to assure herself that Lela was of sound mind and memory.
¶ 8. The chancellor admitted the Will to probate in solemn form, and the Contestants appealed, raising numerous issues, including their claim that the Will’s witnesses did not meet the statutory requirements for attesting witnesses. Because we find this issue dispositive, we decline to address the others.
ANALYSIS
¶ 9. When reviewing a chancellor’s decision to admit a will to probate, we will disturb a chancellor’s findings of fact only if they are manifestly wrong, clearly erroneous, or unsupported by substantial credible evidence.[1]

The witnesses to the Will failed to meet the statutory and legal requirements.

¶ 10. Mississippi law empowers “[e]very person eighteen (18) years of age or older, being of sound and disposing mind” to make a will which, if not “wholly written and subscribed” by the testator, must be “attested by two (2) or more credible witnesses in the presence of the testator or testatrix.[2] The attesting witnesses must meet four requirements: First, the testator must request them to attest the will;[3] second, they must see the testator sign the will;[4] third, they must know that the document is the testator’s last will and testament;[5] and finally, they must satisfy themselves that the testator is of sound and disposing mind and capable of making a will.[6]
¶ 11. These formalities associated with attesting a will are important, not only as safeguards against fraud by substi *1153 tution of a different will than the one signed by the testator, but also to make sure a person executing a -will is of sound and disposing mind.[7]
¶ 12. Here, there was sufficient evidence for the chancellor to find that Chaw-la and Delaney were present while Lela signed the document in their presence. So the document satisfied the requirement that the witnesses see the testator sign the will. But the record does not support a finding that the witnesses satisfied the other three requirements.
¶ 13. Both Chawla and Delaney testified that Lela did not ask them to witness the Will, and that they did nothing to determine whether Lela was of sound and disposing mind. Chawla’s testimony at trial soundly contradicted the proof of will she was asked to sign ten years after the Will’s execution.
¶ 14. Delaney asserted that she would not have signed the Will had she thought Lela did not understand what she was doing. While that may be true, it does not cure her failure actually to form an opinion about Lela’s competency, which she testified — unequivocally—she did not do. And her failure to form an opinion— standing alone — is enough to invalidate the will because, as an attesting witness, she was required to satisfy herself that Lela possessed sound mind when she executed the Will. One may not witness a will in ignorance.
¶ 15. In summary, the subscribing witnesses, by their own admissions, failed to satisfy the statutory requirements for attesting witnesses, and the chancellor abused his discretion in finding otherwise.
¶ 16. The dissent says each witness knew she was witnessing a will. We disagree. Although Chawla answered “correct” when asked whether she knew it was a will, she later clarified that she thought the documents were only “some important papers.”
¶ 17. The dissent also places importance on Chawla’s recognition of the proof of will she signed ten years after the Will’s execution. Her testimony, however, falls short of the requirement that she form an opinion — when she signed the Will — on Lela’s soundness of mind. Instead, she testified that she did nothing to determine whether Lela possessed sound mind. In fact, she testified she never spoke to Lela — before, during, or after she signed the Will.
¶ 18. Both Chawla and Delaney had the duty to observe Lela and to take the necessary steps to form opinions as to whether she was of sound mind. Both testified, under oath, that they did not do so.
¶ 19. Neither Chawla nor Delaney was acquainted with Lela — a circumstance we addressed in Webster v. Kennebrew.[8] Although no attorney was involved here, we again set out our admonition for the benefit of the bench and bar:
[I]t is our hope that subscribing witnesses be advised by counsel of their corresponding duty to that testator. A witness to a will should be some person acquainted with the testator, and having no interest, direct or indirect, as a beneficiary. He should be impressed with the necessity of specifically observing the testator and other person sign the will. He should be impressed with the necessity of being satisfied that the testator understands it is a will, and that it expresses the wishes of the testa *1154 tor. Finally, the will should be signed in privacy, with no other persons present than the testator, his attorney and the witnesses, unless required by unusual and compelling circumstances. The presence of some persons who would cast a cloud or suspicion on the solemn occasion should be scrupulously avoided. In most of the will contest cases which come before this Court, we find one or more of these simple precautions have been ignored.[9]
CONCLUSION
¶ 20. Because the subscribing witnesses were not “attesting” witnesses as required by statute, the chancellor erred by admitting the Will to probate. We therefore reverse the chancellor’s decision and render a decision in favor of the Contestants.
¶ 21. REVERSED AND RENDERED.
CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND KING, JJ., CONCUR. PIERCE, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, J.

. In re Estate of Holmes, 961 So.2d 674, 679 (Miss.2007).

. Miss.Code Ann. § 91-5-1 (Rev.2004) (emphasis added).

. Green v. Pearson, 145 Miss. 23, 110 So. 862, 864 (1927).

. Matter of Jefferson’s Will, 349 So.2d 1032, 1036 (Miss.1977).

. Estate of Griffith v. Griffith, 30 So.3d 1190, 1194 (Miss.2010).

. Matter of Jefferson's Will, 349 So.2d at 1036 (Miss.1977).

. Id. at 1036.

. Webster v. Kennebrew, 443 So.2d 850, 859 (Miss.1983).

. Id. (emphasis added). See, e.g., Griffith, 30 So.3d at 1194.