# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CT-01605-SCT

*MARQUAN D. STOVER*

*v.*

*ELAINE G. DAVIS, EXECUTRIX OF THE*
*ESTATE OF TAMORA G. ROBINSON,*
*DECEASED*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2016 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| TRIAL COURT ATTORNEYS: | SHARON D. HENDERSON |
| | STEVE YOUNGER |
| | TRACEE O. DARBY |
| | JACK G. MOSS |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE |
| | SECOND JUDICIAL DISTRICT |
| | OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | MARQUAN D. STOVER (PRO SE) |
| | RICK D. PATT |
| ATTORNEY FOR APPELLEE: | JACK G. MOSS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 04/25/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

BEAM, JUSTICE, FOR THE COURT:

¶1.   Marquan D. Stover filed a motion to contest the second codicil to his great aunt

Tamora Robinson's last will and testament, alleging that the second codicil was the product

of undue influence by Robinson's sister Elaine Davis. After a hearing, the Chancery Court

of the Second Judicial District of Hinds County, found no undue influence and dismissed Stover's motion to contest.

¶2. Stover appealed, arguing that the chancellor had erred by not requiring Davis to rebut the presumption of undue influence and that the decision was not supported by substantial, credible evidence. The Court of Appeals issued a plurality decision, affirming the ruling of the chancellor. ***Stover v. Davis***, 2016-CP-01605-COA, 2018 WL 2110017 (Miss. Ct. App. May 8, 2018). This Court granted Stover's petition for a writ of *certiorari*. We hold that the court must find by clear and convincing evidence that a presumption of undue influence, which arises when a confidential relationship is coupled with suspicious circumstances, is rebutted. We reverse the decisions of the Court of Appeals and of the chancery court, and we remand for further factfinding by the chancellor.

**FACTS**

¶3. Robinson died on October 11, 2013, at the age of eighty-nine. She had no children, and her husband predeceased her. Before her death, Robinson executed a last will and testament, signed June 14, 1993, a first codicil, signed October 12, 2000, and a second codicil, signed May 20, 2013. On October 28, 2013, the chancery court admitted Robinson's will and the two codicils to probate and issued letters testamentary to Davis.

¶4. On November 7, 2013, Stover filed a motion to contest the second codicil on the ground that it had been the product of undue influence by Davis. The second codicil had made two changes to Robinson's will. First, it changed the disposition of thirty acres of real property, which originally had been devised to a nephew, Richard Robinson. That property

2

was devised to Davis. Second, it nominated Davis as executrix and Robinson's niece Sherry Fletcher as successor executrix in the event that Davis was unable, removing Robinson's other sister, Clyda Myers, from that role. Davis testified that the reason for these changes was that Richard Robinson and Clyda Myers both had predeceased Robinson.

¶5. At the hearing, Stover testified that he believed the devise of property to Davis and her nomination as executrix resulted from undue influence. Before Robinson's mental decline, according to Stover, she had expressed that she wanted the thirty acres to remain in the Robinson family and that Davis violated that wish. Further, Stover testified that Robinson was on medication for dementia. In early 2013, she suffered a stroke that had worsened her mental condition greatly. After the stroke, Stover said that Robinson could not eat, bathe, or comb her hair without assistance, and she could not identify the time, date, or year. Stover testified that Robinson would frequently behave unusually, yelling, "Can I lay down" when she already was lying down.

¶6. Davis testified that Robinson, who was twenty-one years older than she, had been diagnosed with dementia in March 2006. Following the diagnosis, the progress of the disease had been slow, and Robinson, according to Davis, had known what she was doing when she executed the second codicil. Davis testified that Robinson did sometimes ask to lie down but that usually she was in a recliner at those times, although occasionally she was lying in bed already. Davis also testified that the family had established a conservatorship for Robinson in 2006 after Stover had purchased a Cadillac in Robinson's name and also had

acquired credit cards in her name.[1] Clyda Myers had acted as Robinson's conservator until Myers's death, when Myers was succeeded by Davis.

¶7.     Davis testified that she and her husband, Leroy Davis, and another relative, Sylvester Griffin, visited Robinson on May 20, 2013, at the nursing home. Davis recalled conversations with Robinson in which she would state how much she missed Myers, and Davis said she would remind Robinson that Myers had died "and, you know, we need to know what you want to do." Davis testified that Robinson was concerned about "her business," meaning the will. Davis asked Robinson whom she wanted to replace Myers as executrix, and Robinson replied, "Why can't you and Sherry[2] do it." Davis also told her that Richard Robinson had died and asked Robinson what she wanted to do about the property she had left to him. According to Davis, Robinson thought about it and said she wanted to leave it to Davis. Davis asked if she was sure, and Robinson said yes. So Davis used her own cell phone and called Robinson's attorney, Jack Moss. Davis said that when Moss arrived, Robinson recognized him.

¶8.     Moss testified that he had been Robinson's attorney since approximately 1980, that he had drafted the will and both codicils for Robinson, and that he had established her conservatorship. Moss testified that when Davis called, he asked to speak with Robinson.

---

[1] Stover testified that Robinson had leased this vehicle for him like she had done for four or five other vehicles up until that point. Stover explained that the credit cards were in his name because Robinson also frequently purchased his children's school supplies. Davis pursued an elderly abuse claim with the attorney general's office, but nothing came of the investigation. It is undisputed that Robinson was suffering from dementia.

[2] Presumably, Robinson was referring to Sherry Fletcher.

They talked for a few minutes, and he said he wanted to meet with her in person. Moss traveled to Compere Nursing Home and visited Robinson. He asked the family to leave the room so that he could question Robinson to determine her capabilities. He testified that Robinson's state of mind was good. She was physically weakened, but she could sit up in bed. Moss said that Robinson recognized him and knew the objects of her bounty. Moss testified that, after speaking with Robinson for twenty or thirty minutes, he went back to his office and drafted the second codicil. Then he returned to the nursing home and read over the codicil with Robinson. She signed it, witnessed by Moss and Sylvester Griffin. Moss opined that Robinson had not been influenced unduly by anyone in executing the codicil.

¶9. The chancellor found that Davis had established a *prima facie* case of the validity of the will and codicils. The chancellor found that Stover had not satisfied his burden to show that the second codicil was the result of undue influence and entered a judgment dismissing Stover's motion to contest.

## STANDARD OF REVIEW

¶10. "A chancellor's findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or unless the chancellor applied an erroneous legal standard." ***Wright v. Roberts***, 797 So. 2d 992, 997 (Miss. 2001) (citing ***In re Estate of Grantham***, 609 So. 2d 1220, 1223 (Miss. 1992)).

## DISCUSSION

5

¶11.    "The sole issue in a will contest is devisavit vel non,[3] or will or no will." ***Trotter v. Trotter***, 490 So. 2d 827, 833 (Miss. 1986). The proponent of the will has the burden of proof of the will's validity, and this burden of proof stays with the proponent throughout the trial. ***Harris v. Sellers***, 446 So. 2d 1012, 1014 (Miss. 1984). The proponent makes a *prima facie* case of validity when the will and record of probate are admitted into evidence. ***Id.*** At that point, the burden shifts to the contestant to produce evidence challenging the will's validity. ***Clardy v. Nat'l Bank of Commerce of Miss.***, 555 So. 2d 64, 66 (Miss. 1989).

¶12.    The contestant raises a presumption of undue influence by showing the existence of a confidential relationship between the testator and a beneficiary under the will, along with suspicious circumstances. ***Croft v. Alder***, 237 Miss. 713, 723, 115 So. 2d 683, 686 (1959). Suspicious circumstances may include the testator's mental infirmity or direct involvement of the beneficiary in the confidential relationship in preparing or executing the will. ***Id.*** at 686. When a presumption of undue influence arises, then the proponent of the will bears the burden to rebut the presumption with clear and convincing evidence that the will was not the result of undue influence. ***In re Estate of Dabney***, 740 So. 2d 915, 921 (Miss. 1999) (citing ***Croft v. Alder***, 237 Miss. 713, 115 So. 2d 683, 686 (1959)). To rebut the presumption, the proponent must show three things: "(a) good faith on the part of the beneficiary, (b) the testatrix's full knowledge and deliberation of the consequences of her actions, and (c) the

---

[3]*Devisavit vel non* means "he (or she) devises or not." *Devisavit vel non*, Black's Law Dictionary (10th ed. 2014). "An issue directed from a chancery court to a court of law to determine the validity of a will that has been contested, as by an allegation of fraud or testamentary incapacity. *Id.*

testatrix received the advice of a competent person disconnected from the beneficiary and devoted wholly to him." *Id.* at 921 (citing *Murray v. Laird*, 446 So. 2d 575, 578 (Miss. 1984)).

¶13.    As the Court of Appeals recognized, the chancellor made no findings on whether a confidential relationship had existed between Robinson and Davis or whether a presumption of undue influence arose. *Stover*, 2018 WL 2110017, at *24.  Yet the Court of Appeals held that, even if a presumption of undue influence had arisen, Davis rebutted it, because clear and convincing evidence existed in the record to satisfy the three-prong test. *Stover*, 2018 WL 2110017, at *27. We disagree.  The record shows that the chancellor found that Davis had made a *prima facie* case of the will's validity and that Stover had not met his burden to show that the second codicil was the product of undue influence.  The chancellor misstated the burden of proof as preponderance of the evidence when the burden for a presumption of undue influence is clear and convincing.  *See **In re Estate of Dabney**,* 740 So. 2d at 921 (citing *Croft*, 115 So. 2d at 686).  Further, the record does not show the burden-shifting scheme set forth above.  If a presumption of undue influence had, in fact, arisen, then Stover did meet his burden, and  Davis, the proponent of the will and codicils, bore the burden to rebut the presumption with clear and convincing evidence.

¶14.    As the chancellor rightly found, Davis's submission of the will and the record of probate and its receipt into evidence established a *prima facie* case of the will's validity. But Stover's proof raised a presumption of undue influence, because he showed that Davis was

7

in a confidential relationship with Robinson when the second codicil was executed and that the second codicil had been executed under suspicious circumstances.

¶15.     Because Davis was Robinson's duly appointed conservator, a confidential relationship was established. We have held that "[a] conservator stands in the position of a trustee, has a fiduciary relationship with the ward and is charged with a duty of loyalty toward the ward." *Bryan v. Holzer*, 589 So. 2d 648, 657 (Miss. 1991). While the existence of a conservatorship alone is not immediate grounds for undue influence, the courts should not take lightly the role, power, trust, and influence of the conservatorship relationship between the person or ward and his or her conservator.  Wards deserve the most meticulous judicial scrutiny in situations such as this to ensure the ward's protection.  When a confidential relationship exists, coupled with suspicious circumstances, the proponent of the will bears the burden of rebutting the presumption by clear and convincing evidence.

¶16.     Suspicious circumstances were shown by the undisputed evidence that Robinson suffered from dementia.  A conservatorship had been established for Robinson in 2006, and Davis, who stepped into the role of conservator after Myers died, was directly involved in the preparation of the will.  Davis testified that she discussed the will with Robinson. Davis reminded Robinson of the deaths of a named beneficiary and the executrix, and the changes made in the codicil were both to Davis's benefit.  Davis called Attorney Moss on her own cell phone to initiate the process of procuring the second codicil. Given that these facts were uncontested, the burden shifted to Davis to prove, by clear and convincing evidence, "(a) good faith on the part of the beneficiary, (b) the testatrix's full knowledge and deliberation

of the consequences of her actions, and (c) [that] the testatrix received the advice of a competent person disconnected from the beneficiary and devoted wholly to him." ***In re Estate of Dabney***, 740 So. 2d at 921(citing ***Murray***, 446 So. 2d at 578).

¶17.    Because the chancellor erroneously did not recognize that a presumption of undue influence had arisen, the chancellor made no findings of fact on the three-part test for determining whether Davis had rebutted the presumption by clear and convincing evidence. Instead, the chancellor found that Stover had not met his burden. But Stover had, in fact, met his burden of production, resulting in the burden's shifting to Davis to rebut the presumption with clear and convincing evidence. Because the evidence was such that the chancellor reasonably could have found either that Davis had rebutted the presumption or that she had not, we reverse the decisions of both courts and remand to the chancery court for factfinding on whether Davis rebutted the presumption by clear and convincing evidence.

## CONCLUSION

¶18.    We hold that the chancellor manifestly erred by failing to find that a presumption of undue influence had arisen, by stating the wrong burden of proof, and by failing to require Davis to rebut the presumption of undue influence with clear and convincing evidence. Therefore, we reverse the decisions of the Court of Appeals and of the chancery court, and we remand for further factfinding by the chancellor.

¶19.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ.,CONCUR. KITCHENS, P.J., AND GRIFFIS, J., NOT PARTICIPATING.**