# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00713-COA

IN THE MATTER OF THE ESTATE OF                              **APPELLANTS**
MICHAEL EDWARD ROBERTS, DECEASED:
TERESA D. HERD AND BRYAN K. WILLIAMS

v.

KEITH STOKES AND GLORIA JOHNSON                      **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2023 |
| TRIAL JUDGE: | HON. KILEY CATLEDGE KIRK |
| COURT FROM WHICH APPEALED: | CARROLL COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | VALLRIE LANETTE DORSEY SABRINA D. HOWELL |
| ATTORNEY FOR APPELLEES: | JAMES H. POWELL III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 11/26/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Teresa Herd and Bryan Williams (Appellants) appeal from the Carroll County Chancery Court's judgment finding that a purported will executed in 2016 was the decedent's last will and testament. On appeal, the Appellants assert the following claims of error: the chancellor erred by admitting the purported will into evidence; the chancellor erred in finding that the subscribing witness met the requirements of an attesting witness; and the chancellor failed to give appropriate weight to the testimony of the expert witness.

¶2. After our review, we find no error. We therefore affirm the chancellor's judgment.

**FACTS**

¶3.     Michael Edward Roberts died on December 19, 2016. In March 2017, Teresa, the mother of Michael's minor child, petitioned the chancery court to open an estate for Michael and appoint Teresa as administratrix. In her petition, Teresa alleged that Michael died intestate. The chancellor entered an order opening Michael's estate for probate and appointing Teresa as administratrix of the estate.

¶4.     In June 2017, Keith Stokes and Gloria Johnson (Appellees)—Michael's brother and sister—filed a petition to probate Michael's purported last will and testament dated January 11, 2016 (2016 Will). The Appellees attached the 2016 Will to the petition to probate. The 2016 Will listed Mary Lee Blueitt and Lena Berry as witnesses, and the will also contained an attestation clause signed by both witnesses. The attestation clause stated that while in the presence of Mary Lee and Lena, Michael signed the will and declared it to be his last will and testament. The Appellees also requested that the chancellor remove Teresa as administratrix of Michael's estate and appoint Keith as executor of Michael's estate.

¶5.     Teresa filed a motion opposing the Appellees' petition to probate the 2016 will and requested a jury trial to contest the will.[1] In her motion, Teresa contested the validity of the 2016 Will and alleged that while she was taking inventory of the estate's assets in her role as admininstratrix, she "discovered several questionable and wasteful transfers by [Keith] of assets out of the Estate to the personal enrichment of [the Appellees]."

---

[1] *See* Miss. Code Ann. § 91-7-21 (Rev. 2018) ("Any one desiring to contest a will presented for probate may do so before probate by entering in the clerk's office in which it shall be presented his objection to the probate thereof, and causing all parties interested and who do not join him in such objection to be made parties defendant. Thereupon the issue devisavit vel non shall be made up and tried, and proceedings had as in other like cases.").

2

¶6. In response to Teresa's motion, the chancellor entered an order denying the Appellees' petition to probate the 2016 Will at that time and granted Teresa's request for a jury trial on the issue of the will contest.

¶7. In August 2018, Bryan Williams—Michael's nephew—filed a motion to intervene in Michael's estate proceedings. Bryan claimed that he was potentially an heir under another will Michael allegedly executed in 2001 (2001 Will). The 2001 Will named Bryan as executor and a beneficiary. The chancellor allowed Bryan to intervene in the will contest, and Bryan filed a petition to probate Michael's 2001 Will.

¶8. Litigation continued. In January 2023, the chancellor held a bench trial[2] to determine whether the 2016 Will was Michael's last will and testament. At the trial, the chancellor heard testimony from Teresa and Keith, as well as Lena Berry, Lena Blueitt Scott, and expert witness Robert Foley. The 2016 Will and the 2001 Will were admitted into evidence.

¶9. At the time of trial, Lena was eighty-nine years old. Lena testified that she had known Michael since he was a young boy. Lena recalled that one day while she was at a service station in Winona, Mississippi, Michael drove by, stopped his car, and asked if Lena would come to his office and "do him a little favor." Lena explained that at the time, she did not know what Michael wanted her to do, but she confirmed that she did go to Michael's office. Lena stated that Michael's office was located in the funeral home that he owned. When Lena arrived, she saw Mary Lee Blueitt sitting in Michael's office. According to Lena, Michael showed Lena a document and asked if she would sign it. Lena testified that she observed

---

[2] The record is unclear as to why the chancellor held a bench trial instead of the requested jury trial. Regardless, the Appellants do not raise this as an issue on appeal.

3

the document "said a little something about a will[.]" Lena stated that Michael also asked Mary Lee to sign the document. Lena recalled that Mary Lee signed the document first, followed by Lena and Michael. Lena confirmed that she witnessed Michael signing the document.

¶10. At trial, Lena was presented with the 2016 Will signing, and she confirmed that it was the document she signed in Michael's office. Lena also identified her signature on the witness page of the 2016 Will. However, Lena admitted that she did not recall the date or year when she witnessed Michael sign the will, explaining that it happened a long time ago.

¶11. The record reflects that the second witness to the 2016 Will, Mary Lee Blueitt, was deceased by the time of trial. However, Mary Lee's daughter, Lena May Blueitt Scott, testified at trial and confirmed that Mary Lee had witnessed Michael sign the 2016 Will. Scott identified her mother's signatures on the 2016 Will and attestation clause, explaining that she was very familiar with her mother's handwriting and signature.

¶12. Teresa testified that she is the mother of Michael's minor child. Teresa recalled that she learned about Michael's death through a phone call from Keith. Teresa testified that during the phone conversation, Keith indicated that he had found "a couple of policies" with the minor child's name on them. Teresa testified that Keith stated he would provide her with more information about the policies at a later date. Teresa testified that when she did not hear back from Keith, she sent Keith a letter inquiring as to the existence of a will or any insurance policies. Teresa explained that when Keith never responded to her letter, she hired an attorney to open an intestate estate for Michael.

4

¶13. Keith testified that the day before Michael died, Michael informed Keith that he had a will and told Keith to "look in and around the funeral home, and to look in the safe deposit box." Keith stated that he found the 2016 Will in Michael's office in February 2017. Keith also testified that he eventually found a second will in Michael's office, which was later identified as a copy of the 2001 Will. Keith denied having any conversations with Teresa regarding insurance policies.

¶14. The chancellor also heard testimony from Robert Foley, an expert in the field of forensic document examination. Foley testified that he was hired to authenticate Michael's signature on the 2016 Will. Foley explained that to perform his handwriting analysis, he compared the signature on the 2016 Will to Michael's signature on other "comparative" documents, including the 2001 Will and numerous other documents Michael had signed from 2002 through 2016. After analyzing the documents, Foley concluded that the person who signed Michael's signature on the 2016 Will was not the same person who signed the documents submitted for comparison. However, on cross-examination, Foley admitted that different handwriting experts could reach different opinions based on their training, experience, and certification as to whether a handwriting sample was a forgery.

¶15. On May 19, 2023, the chancellor entered a thorough and eloquent written judgment finding that the 2016 Will was Michael's last will and testament. It is from this judgment that the Appellants now appeal.

**STANDARD OF REVIEW**

¶16. "When reviewing a chancellor's decision to admit a will to probate, we will disturb

5

a chancellor's findings of fact only if they are manifestly wrong, clearly erroneous, or unsupported by substantial credible evidence." *In re Est. of Holmes*, 101 So. 3d 1150, 1152 (¶9) (Miss. 2012). However, we review questions of law de novo. *McIntosh v. McIntosh*, 294 So. 3d 1196, 1201 (¶10) (Miss. Ct. App. 2019).

## DISCUSSION

¶17. The Appellants argue that the Appellees failed to meet their burden of proving the validity of the 2016 Will. First, the Appellants assert that the 2016 Will was never properly authenticated, and therefore the chancellor erred in entering the document into evidence. The Appellants also assert that the 2016 Will was not properly executed or published. Finally, the Appellants argue that the chancellor erred by failing to give proper weight to Foley's expert testimony.

### I. Authentication and Attestation

¶18. The Appellants argue that the Appellees failed to properly authenticate the will and that, as a result, the chancellor erred in admitting the will into evidence. The Appellants assert that Mississippi Rule of Evidence 901 governs the authentication of the 2016 Will.

¶19. Rule 901(a) states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b)(1) provides that an item of evidence can be authenticated by the testimony of a witness with knowledge that "[the] item is what it is claimed to be." The Appellants cite *Van Quinn v. Quinn*, 278 So. 3d 1160 (Miss. Ct. App. 2019), in support of their assertion that the Appellees failed to comply with the

6

requirements of Rule 901. In *Van Quinn*, this Court held that a chancellor did not abuse his discretion in admitting unsigned wills into evidence "[b]ecause the documents were properly authenticated under Rule 901[.]" *Id*. at 1168 (¶34). However, the matter in *Van Quinn* was not a probate proceeding but, rather, a hearing on a complaint to set aside deeds made by the decedent based on claims of undue influence and a lack of mental capacity. *Id*. at (¶¶34-35). This Court further clarified that the unsigned wills "were not admitted into evidence in the same manner as they would be admitted for probate[,]" explaining that the wills were submitted "to show [the decedent's] intent [and wishes for his property] at the time[.]" *Id*. at 1167 (¶31). Unlike *Van Quinn*, the matter before us is a proceeding to determine whether the 2016 Will was, in fact, Michael's last will and testament. Therefore, Mississippi Code Annotated sections 91-5-1 (Rev. 2021) and 91-7-7 (Rev. 2021) govern the authentication of the 2016 Will as Michael's last will and testament.

¶20. In a will contest, the proponent of a will bears the burden of proving the will's validity, including its due execution, by a preponderance of the evidence. *Clardy v. Nat'l Bank of Com. of Miss.*, 555 So. 2d 64, 66 (Miss. 1989). "[T]his burden of proof stays with the proponent throughout the trial." *Stover v. Davis*, 268 So. 3d 559, 563 (¶11) (Miss. 2019). Section 91-5-1 governs the execution of a will and provides, in part, that

> [a] last will and testament . . . [must] be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.

Section 91-7-7 sets forth the requirements for proving the due execution of a will: "[t]he due

7

execution of the will . . . must be proved by at least one (1) of the subscribing witnesses, if alive and competent to testify."

¶21. As stated, the 2016 Will listed Lena as one of the subscribing witnesses, and Lena signed the 2016 Will's attestation clause. Lena testified at the bench trial and confirmed that she witnessed Michael sign the 2016 Will. During Lena's testimony, the attorney for the Appellees moved to have the 2016 Will entered into evidence. The Appellants' attorney objected, arguing that Lena never identified the document as Michael's last will and testament. The chancellor responded that Lena "might not know" if the document was in fact Michael's last will and testament. Lena answered, "I don't know." The chancellor recalled Lena's testimony that she saw the word "will" on the document she signed, but the chancellor reserved ruling on the objection until he was able to question Lena. The chancellor ultimately admitted the 2016 Will into evidence after finding that Lena met the requirements of an attesting witness under section 91-5-1.

¶22. The Appellants argue that the chancellor erred in finding that Lena was an attesting witness because Lena's testimony shows that Michael never published the will to her and that she did not know that the document she signed was Michael's last will and testament. The Mississippi Supreme Court has articulated the four requirements of an attesting witness for purposes of section 91-5-1:

> First, the testator must request them to attest the will; second, they must see the testator sign the will; third, they must know that the document is the testator's last will and testament; and finally, they must satisfy themselves that the testator is of sound and disposing mind and capable of making a will.

*Est. of Holmes*, 101 So. 3d at 1152 (¶10). The supreme court has also clarified that section

91-5-1 requires that a will be published to the attesting witness. *Est. of Griffith v. Griffith*, 30 So. 3d 1190, 1196 (¶20) (Miss. 2010). "Publication of a will means a communication by the testator, or attributable to the testator, that the subject writing is a will." *Id*. at 1194 n.3 (quoting Robert A. Weems, *Wills & Administration of Estates in Mississippi* § 4:7 (3d ed. 2003)). Specifically, an attesting witness to a will must "know the purpose of their attestation, even when the testator signs the will in their presence." *Id*. at 1196 (¶20).

¶23. In determining that Lena met the requirements of an attesting witness, the chancellor found that Lena's testimony confirmed that she saw Michael sign the will. The chancellor also found that Lena's testimony "reveals that [she] had satisfied herself that [Michael] was of sound and disposing mind and mentally cognizant of what he was requesting[,]" explaining that while "no formal interrogation of [Michael's] mental state occurred prior to his signing of the will[,] . . . [n]o testimony reflected that [Michael] was not his usual self." As to whether Michael requested that Lena and Mary Lee attest the will, the chancellor found that "it is clear [Michael] requested each to attest his will." In making this determination, the chancellor recognized that "publication may be accomplished through construction" and cited *Green v. Pearson*, 145 Miss. 23, 110 So. 862, 864 (1927), where the supreme court held, "It is sufficient that enough is said and done in the presence and with the knowledge of the testator to make the witnesses understand that he desires them to know that the paper is his will, and that they are to be the witnesses thereto." Finally, the chancellor found that Lena's testimony confirmed that at the time of execution, she knew that the document she was signing was Michael's last will and testament. The chancellor stated that "[t]he fact that

9

seven years passed since witnessing this act, and considering [Lena's] testimony collectively, in her terms, what she referenced, described and testified to was the decedent's Last Will and Testament." The chancellor acknowledged that the expert witness, Foley, essentially testified that Michael's signatures on the 2016 Will were forged. However, the chancellor found that unlike Foley, Lena "stood on the scene as this instrument evolved into more than a typed description of an individual's desire intentions."

¶24. When reviewing a chancellor's findings in a will contest, we will not reverse when the findings "are supported by substantial credible evidence in the record." *In re Est. of Williams*, 379 So. 3d 968, 980 (¶42) (Miss. Ct. App. 2024). Upon review, we find that the chancellor's findings in the case before us are supported by substantial credible evidence in the record. Lena testified that Michael, whom Lena had known since he was young, asked her if she would come to his office and "do him a little favor." Lena stated that she did not know what Michael wanted her to do until she arrived at his office. Lena testified that when she arrived at his office, Michael showed Lena and Mary Lee a document and asked if they would sign it. Lena observed that the document "said a little something about a will[.]" Lena recalled that Mary Lee signed the document first, followed by Lena. Lena testified that after she and Mary Lee signed the document, she witnessed Michael sign it.

¶25. The transcript also reflects that the attorney for the Appellees placed the 2016 Will in front of Lena and asked if she recognized the document. Lena answered, "This is pertaining to . . . [Michael's] will." Lena also confirmed that she signed the document, and she identified her signature on the witness page. Lena testified that although she did not read

10

the document, she "saw it said 'will' over there[.]" Although Lena and Foley provided conflicting testimony as to the validity of the 2016 Will, we recognize that "[t]he chancellor is the fact-finder and is charged with the obligation of resolving disputes between the parties[.]" *Est. of Volmer v. Volmer*, 832 So. 2d 615, 622 (¶21) (Miss. Ct. App. 2002); *McIntosh*, 294 So. 3d at 1201 (¶10). The chancellor is also "the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." *Sproles v. Sproles*, 782 So. 2d 742, 747 (¶16) (Miss. 2001).

¶26. After our review, we find that substantial evidence supports the chancellor's finding that Lena met the requirements of an attesting witness and that the Appellees met their burden of proving Michael's execution of the 2016 Will by a preponderance of the evidence. Accordingly, we find that the chancellor did not err in determining that the 2016 Will was Michael's last will and testament and in admitting the 2016 Will into evidence.

## II. Expert Testimony

¶27. The Appellants also argue that the chancellor failed to afford the appropriate weight to the testimony of Foley, the expert witness.

¶28. As acknowledged above, the chancellor is "the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." *Id.* In cases like the one before us, "where conflicting testimony is presented, expert and otherwise, the chancellor is required to make a judgment on the credibility of the witnesses in order to resolve the questions before

the court." *Welsh v. Mounger*, 883 So. 2d 46, 49 (¶7) (Miss. 2004). "This Court gives deference to a chancellor's findings in regard to witness testimony, because the chancellor is able to observe and personally evaluate the witnesses' testimony and the parties' behavior." *McNeese v. McNeese*, 119 So. 3d 264, 275 (¶32) (Miss. 2013) (internal quotation marks omitted). We will not disturb a chancellor's findings of fact unless "they are manifestly wrong, clearly erroneous, or unsupported by substantial credible evidence." *Est. of Holmes*, 101 So. 3d at 1152 (¶9).

¶29. The transcript reflects that the chancellor accepted Foley as an expert in the field of forensic document examination. Foley testified that to authenticate Michael's signature on the 2016 Will, he compared the 2016 Will to Michael's signature on other "comparative" documents, including the 2001 Will and numerous other documents signed by Michael from 2002 through 2016. Foley explained that when he analyzed the documents, he performed a side-by-side comparison of the signatures on the 2016 Will with signatures from documents in the same date range as the will. Foley testified that he observed numerous "very obvious differences" in the signatures. After completing his handwriting analysis on the signatures, Foley opined that the person who signed Michael's signature on the 2016 Will was not the same person who signed the numerous documents submitted for comparison. Foley alleged that whoever signed Michael's signature on the 2016 Will was trying to copy Michael's signature from the 2001 Will. On cross-examination, Foley admitted that different handwriting experts could reach different opinions concerning whether a handwriting sample was a forgery. Foley described the field of handwriting analysis as "a blend between art and

12

science," explaining that it is a "comparative process."

¶30. After hearing testimony and reviewing the evidence, the chancellor found that the Appellees met their burden of proving that the 2016 Will was Michael's last will and testament. In his judgment, the chancellor acknowledged Foley's education and his expert opinion that Michael's signature on the 2016 Will was a forgery. The chancellor also acknowledged Foley's testimony that the field of handwriting analysis is "one of art and science." The chancellor's judgment shows that he ultimately gave more weight to Lena's testimony than to any other witness, explaining that "[t]estimony, body language, voice[,] and context all play a role in the evaluation" of the witnesses. After hearing Lena's testimony and observing her body language, the chancellor found that Lena's "recollection remains tied to the truth." The chancellor further found that "[u]nlike Expert Foley, [Lena] stood on the scene as this instrument evolved into more than a typed description of an individual's desired intentions."

¶31. The Appellants maintain that Foley was a well-qualified handwriting expert, and therefore the chancellor should have given more weight to Foley's testimony than to Lena's "contradictory and flawed testimony." The Appellants assert that the chancellor "ignored" the fact that "handwriting analysis is a field routinely recognized by courts and that experts in the field are often relied upon by finders of fact in making decisions" and, instead, "discount[ed] the field as a blend of art and science." However, the transcript reflects that Foley himself used that exact phrase to describe the field of handwriting analysis. Additionally, the supreme court has held that "the weight and conclusiveness of testimony

13

by a handwriting expert depends upon the character, capacity, skill, and opportunities for observation of the expert, and the cogency of the reasons given by him for his opinion. *This is essentially a question for the trier of facts*." *Clark v. Lansford*, 191 So. 2d 123, 125 (Miss. 1966) (emphasis added). Finally, we find that the record does not support the Appellants' claim that Lena's testimony "was severely questioned and waivered depending on who was asking her questions."

¶32. Keeping in mind our limited standard of review, as well as the fact that the chancellor is the judge of the credibility of witnesses and the weight of their testimony, we find that the chancellor did not manifestly err by giving more weight to Lena's testimony than Foley's testimony. The chancellor supported his findings and opinion as to the conflicting testimony with substantial credible evidence from the record. Because the chancellor is the trier of fact, we will "not substitute [our] judgment for that of the chancellor even if this Court disagrees with the lower court on the finding of fact and might arrive at a different conclusion." *Mayton v. Oliver*, 247 So. 3d 312, 322 (¶34) (Miss. Ct. App. 2017).

## CONCLUSION

¶33. The record before us contains substantial credible evidence to support the chancellor's finding that the Appellees met their burden of proving the validity of the 2016 Will. We therefore affirm the chancellor's judgment.

¶34. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR.**