# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00768-COA

IN THE MATTER OF THE LAST WILL AND           APPELLANT
TESTAMENT OF JOHANNA MASSINGALE,
DECEASED: HARUHIKO MURAKAMI

v.

JANICE M. YOUNG, JENNIFER M. EAKES AND        APPELLEES
JUSTIN MASSINGALE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2015 |
| TRIAL JUDGE: | HON. LAWRENCE PRIMEAUX |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN E. HOWELL |
| ATTORNEY FOR APPELLEES: | STEPHEN B. JACKSON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | GRANTED THE APPELLEES' MOTION FOR SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED - 08/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE ISHEE, P.J., CARLTON AND JAMES, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Haruhiko Murakami appeals the Clarke County Chancery Court's grant of summary judgment to Janice Young, Jennifer Eakes, and Justin Massingale (collectively, the Appellees). The chancellor found that an additional page added to Johanna Massingale's will after the will's execution failed to meet the statutory requirements of a valid codicil or holographic will.[1] In addition, the chancellor found that Johanna's will failed to incorporate

---

[1] *See* Miss. Code Ann. § 91-5-1 (Rev. 2013).

by reference the additional page. Finding no error in the chancellor's grant of summary judgment to the Appellees, we affirm.

## FACTS

¶2. Johanna died on October 3, 2012. Johanna never married or had any natural or adopted children, and her parents predeceased her. However, Johanna's three siblings, the Appellees, survived her. On October 31, 2013, Johanna's friend, Murakami, filed a petition to probate Johanna's last will and testament. The purported will consisted of nine pages and named Murakami the executor of Johanna's estate. The record reflects that the first eight pages of the will came from a will kit that Johanna downloaded from the Internet. The sixth page of the submitted will contained Johanna's signature, and the seventh page contained the signatures of the three individuals who witnessed Johanna's will. The eighth page again provided the signatures of Johanna and the three attesting witnesses, as well as the signature of a notary public.

¶3. The parties do not contest the validity of the first eight pages of Johanna's purported will. At issue is the ninth page. Murakami testified in his deposition that Johanna created the ninth page on her own and separately from the eight pages obtained from the online will kit. As reflected in the record, the ninth page of the will was typed in a different font style and size from the preceding pages.

¶4. Entitled "Details of Johanna Massingale's [W]ishes of [H]er Last Will and Testament," the ninth page named Murakami the sole beneficiary of Johanna's estate. The ninth page instructed Murakami to pass Johanna's estate and personal belongings to her

2

niece, Lauren Eakes, either at Murakami's death or whenever he deemed fit. In the event that Murakami died before Johanna, the ninth page appointed Johanna's sister, Janice, as executor and directed all Johanna's estate to pass to her niece, Lauren. Finally, in the event that Lauren died before Johanna, the ninth page directed that, at the time of Murakami's death, Johanna's estate would pass to Janice or her descendants. As the record reflects, both Johanna and Murakami signed the ninth page, but the page contained no attesting witness signatures.

¶5. The chancellor entered a judgment for probate of the purported will. On March 10, 2014, the Appellees filed a petition to set aside the ninth page of the will as invalid. Then, on February 2, 2015, the Appellees filed a motion for summary judgment. The Appellees asserted that the first eight pages of the purported will constituted a valid will but that the ninth page was an entirely separate document that was invalid as a will. As a result, the Appellees requested that the chancellor grant their summary-judgment motion and find that the ninth page was neither part of Johanna's will nor constituted a valid will on its own.

¶6. On April 10, 2015, the chancellor entered an order on the Appellees' summary-judgment motion. For the following reasons, the chancellor found that the ninth page of Johanna's will, entitled "Details of Johanna Massingale's [W]ishes of [H]er Last Will and Testament," constituted a separate document from the first eight pages of the will: (1) the ninth page was written in a different and smaller font; (2) the ninth page had a different title and date than the rest of the will; and (3) the ninth page included its own separate signature line.

¶7. After concluding that the ninth page constituted a separate document from the first eight pages of the will, the chancellor next found that the first eight pages of the will failed to incorporate the ninth page by reference. In addition, the chancellor stated that Johanna failed to sign the ninth page in the presence of the witnesses who attested the first eight pages and that the page included no other attesting witness signatures. Furthermore, the chancellor determined that Johanna never acknowledged or published the ninth page as her will or as part of her will.

¶8. The chancellor noted that all three witnesses to the first eight pages of Johanna's will signed an affidavit stating they did not remember seeing the ninth page at the time they witnessed the preceding pages. Furthermore, the three witnesses testified that they never saw Johanna sign the ninth page. Two of the witnesses also affirmatively stated in their affidavits that Johanna neither declared the ninth page to be her will nor stated that the signature on the document was her signature. The chancellor also acknowledged that the affidavit of the notary public who notarized the first eight pages of Johanna's will stated that the notary did not remember seeing the ninth page. In addition to these findings, the chancellor held that Murakami failed to refute the testimony of the witnesses and the notary public and failed to present any relevant evidence to support his argument.

¶9. Pursuant to Mississippi caselaw and statutory law, the chancellor concluded that the ninth page failed to constitute a valid will. Finding that Murakami's mere allegations and denials were insufficient to show the existence of a genuine issue of material fact, the chancellor granted the Appellees' motion for summary judgment. The chancellor ordered

that, "[f]or the time being, the first eight (8) pages of the writing submitted for probate will continue to be probated as the valid Last Will and Testament of the testator, unless and until the beneficiaries inform the [c]ourt of their desire to no longer probate the writing[.]" The chancellor further stated that, "if the first eight pages are determined to be a valid last will and testament, or if both of the two writings are deem[ed] to be void, the entire estate of the decedent would belong equally to [the Appellees], the decedent's [siblings] and heirs at law."

¶10. Aggrieved by the chancellor's grant of summary judgment to the Appellees, Murakami appeals.

## STANDARD OF REVIEW

¶11. We review de novo the trial court's grant or denial of summary judgment. *Ill. Cent. R.R. v. Jackson*, 179 So. 3d 1037, 1044 (¶16) (Miss. 2015). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). This Court "consider[s] the evidence in the light most favorable to the nonmoving party[,]" and the movant "bears the burden of demonstrating the absence of a genuine issue of material fact." *Jackson*, 179 So. 3d at 1044 (¶16) (citing *Hosemann v. Harris*, 163 So. 3d 263, 267 (¶9) (Miss. 2015)).

¶12. Our caselaw reflects that wills must be strictly construed in accordance with statutory requirements. *See generally Wilson v. Polite*, 218 So. 2d 843, 849 (Miss. 1969); *Estate of Regan v. Estate of LeBlanc*, 179 So. 3d 1155, 1158-59 (¶11) (Miss. Ct. App. 2015). No

5

matter the testator's intent, a nonholographic will or codicil remains invalid if the document fails to comply with the requirements of Mississippi Code Annotated section 91-5-1 (Rev. 2013). *See Wilson*, 218 So. 2d at 849. In compliance with statutory requirements, a valid nonholographic will or codicil "must be attested by two or more credible witnesses in the presence of the testator." *Estate of Regan*, 179 So. 3d at 1158-59 (¶11) (citing Miss. Code Ann. § 91-5-1).

## DISCUSSION

¶13. Murakami argues on appeal that the chancellor erroneously granted summary judgment because the validity of the ninth page of the will constituted a factual issue for a jury to determine.

¶14. "No matter how earnestly one may desire and intend to make a will, a paper, although fully intended by the writer to be a will, is ineffective and invalid unless its execution meets statutory requirements." *Wilson*, 218 So. 2d at 849. Section 91-5-1 establishes the following requirements for the valid execution of a nonholographic will or codicil:

> Every person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. *Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.*

(Emphasis added). Thus, Mississippi requires that a nonholographic will or codicil "must

6

be executed in conformity with statutory law and must be attested by two or more credible witnesses in the presence of the testator." *Estate of Regan*, 179 So. 3d at 1158-59 (¶11) (citing Miss. Code Ann. § 91-5-1).

¶15. In awarding the Appellees summary judgment, the chancellor concluded that the ninth page of the probated will was neither a part of Johanna's will nor constituted a valid will on its own merit in accordance with statutory requirements.[2] The chancellor first found that the ninth page constituted an entirely separate document from the first eight pages of the will. According to Murakami's deposition testimony, Johanna obtained the first eight pages of the will when she downloaded a will kit from the Internet. In contrast, Murakami testified that Johanna created the ninth page of the will on her own.

¶16. Entitled "Details of Johanna Massingale's [W]ishes of [H]er Last Will and Testament," the ninth page possessed a different title and date than the rest of the will. In addition, the ninth page was typed in a different font style and size than the rest of the will and contained its own separate signature line. Thus, a review of the record reflects no genuine issue of material fact that the ninth page constituted a separate document from the rest of the probated will. As a result, summary judgment was appropriate.

¶17. The ninth page also failed to meet the statutory requirements for a valid nonholographic will. Like the previous eight pages of the probated will, the ninth page contained Johanna's signature. However, while the first eight pages also included the

---

[2] *See* Miss. Code Ann. § 91-5-1.

7

attesting signatures of at least two credible witnesses, the ninth page did not.[3]

¶18.    In addition, the record contains no evidence to indicate that Johanna signed the ninth page in the presence of two credible witnesses or that she published or acknowledged the document as her will in the presence of witnesses.[4]  Instead, the three witnesses who attested the first eight pages of Johanna's will testified in their affidavits that they had never before seen the ninth page and that Johanna never signed the ninth page in their presence. Furthermore, two of the three witnesses affirmatively stated that Johanna never declared to them that the ninth page constituted her will.  The record also contained the affidavit of the notary public who notarized the first eight pages of Johanna's will.  According to the notary, she did not remember seeing the ninth page at the time she notarized the first eight pages of Johanna's will.  As a result of these findings, the chancellor concluded that the ninth page of Johanna's will failed to constitute a valid will on its own terms.  Based on a review of the record and applicable caselaw, we agree.

¶19.    Finally, as also acknowledged by the chancellor, the first eight pages of the will failed to incorporate by reference the ninth page.  "A writing that is not valid as a will but is in existence when a will is executed may be incorporated by reference into the will if the will

---

[3] *See Estate of Griffith v. Griffith*, 30 So. 3d 1190, 1193-94 (¶¶15-16) (Miss. 2010) (finding that a valid nonholographic will must be attested by at least two witnesses who observe the testator execute the will and who sign the will themselves).

[4] *See id.* at 1195-96 (¶¶19-20) (discussing the requirement that a testator either formally or constructively publish his or her last will and testament).  *See also Wilson*, 218 So. 2d at 850 (recognizing that a valid nonholographic will must be attested by witnesses who can testify "that the instrument was signed, published, and declared by the testator, in their presence, as his or her last will and testament").

manifests an intent to incorporate the writing[,] and the writing to be incorporated is identified with reasonable certainty." Restatement (Third) of Property § 3.6 (1999). In the present case, the first eight pages of Johanna's will completely fail to reference the ninth page. Instead, as the chancellor concluded, "[n]ever in the first eight (8) pages is any writing identified, discussed, or in any way incorporated therein." As a result, we find no manifest error in the chancellor's finding that the first eight pages of Johanna's probated will failed to incorporate by reference the separate document entitled "Details of Johanna Massingale's [W]ishes of [H]er Last Will and Testament."

¶20. Our caselaw clearly establishes that, when the proponent of a summary-judgment motion supports his motion pursuant to Mississippi Rule of Civil Procedure 56, the adverse party may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that a genuine issue exists for trial. *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010). Moreover, the chancellor properly grants summary judgment where the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id.* (citation and internal quotation marks omitted). We also acknowledge that "[m]ere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Id.* (citation omitted).

¶21. Upon review, we find no merit to Murakami's argument that the chancellor erred by granting summary judgment to the Appellees. Applying the appropriate standard of review, as well as appropriate statutory and caselaw, and by viewing the evidence in the light most

9

favorable to Murakami, the nonmovant, we find that no genuine issue of material fact remained for trial. We therefore affirm the chancellor's award of summary judgment to the Appellees.

¶22. **THE JUDGMENT OF THE CLARKE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**