# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01821-COA

**IN THE MATTER OF THE LAST WILL AND**                **APPELLANT**
**TESTAMENT OF LUKE BEARD, DECEASED:**
**ANTONIO CHRISTMAS**

**v.**

**DIANE CHRISTMAS**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2019 |
| TRIAL JUDGE: | HON. NATHAN P. ADAMS JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BERNARD C. JONES JR. |
| | ASHLEY D. JONES |
| ATTORNEY FOR APPELLEE: | W. BRADY KELLEMS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 05/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1.   Antonio Christmas appeals from the judgment of the Lincoln County Chancery Court, which found that the evidence Antonio presented was insufficient to admit the will of his grandfather Luke Beard to probate.  Antonio's mother and Beard's sole heir-at-law, Diane Christmas, contested the validity of the will in which Beard left everything to Antonio.  The issue on appeal is whether the evidence submitted was sufficient to admit the will to probate.  After a review of the record and considering the arguments of counsel, we reverse the chancery court's judgment and remand for further probate proceedings.

**Facts**

¶2.    In February 1987, when he was sixty-five years old, Beard executed a will. In it, he left everything, including thirty-two acres of land, to his grandson, Antonio, who was eighteen at the time. Beard told Antonio that he had prepared the will, but Beard did not tell his only child, Diane.

¶3.    Beard died on February 26, 2001. After Beard's death, Diane continued to pay the taxes on the land, and Antonio maintained Beard's house where Antonio was living at the time of the trial. Thereafter, Diane and Antonio became estranged. Sometime in 2003, Antonio found Beard's will with some old tax receipts in a closet in the house. Antonio took no action and did not tell his mother about the will.

¶4.    Having no knowledge of the will,[1] Diane filed a petition to open an estate to settle her father's affairs on December 11, 2002.[2] In that estate proceeding, Diane was adjudicated to be Beard's only heir. Years later, on June 19, 2014, Diane opened a second estate.[3] Antonio was unaware of either of these estate proceedings.

¶5.    In 2017, when Good Hope Inc. started cutting timber on the property, Antonio tried

---

[1] Antonio testified that he felt that Diane knew about the will, but he admitted that he did not tell her about it. He entered no evidence to establish Diane's knowledge of the will.

[2] Diane testified that following her father's death, she filed a wrongful-death case against his nursing home, and she received some money as a result. She could not recall the amount.

[3] Diane was unclear why she opened the second estate, but it may have been related to the settlement she received on behalf of her father from the black farmer's national class-action lawsuit for past discriminatory lending. She received a $50,000 award.

2

to stop them. From his dealings with Good Hope[4] and other sources, Antonio learned of the estate actions Diane had filed. Antonio then filed this current action to probate Beard's will on October 1, 2018.

¶6.     The typewritten will is brief. It is titled "Last Will and Testament of Luke Beard." The body of the will contains three paragraphs: the first paragraph appoints Diane as the executrix of Beard's will; the second paragraph directs that Beard's bills must be paid; and the third bequeaths all of Beard's property to Antonio. The closing paragraph reads:

> IN WITNESS WHEREOF, I have signed, published and declared this instrument as and for my last will and testament in the presence of the witnesses whose names are subscribed below, and the said witnesses have, at my special instance and request, in my presence and in the presence of each other, subscribed their names as attesting witnesses, all on this the 13th day of January, A.D. 1987.
>
> [/s/Luke Beard]<br>Luke Beard
>
> Witnesses:
> [/s/ Robert Jones Sr.]
> [/s/ Robert Jones Jr.]

The month was originally typed "January," but it was scratched out, and "February" was handwritten below it. There is no separate attestation clause for the witnesses to sign to attest that they witnessed Beard sign the will and that he was of sound mind.

¶7.     Diane contested the will and filed a "Caveat and Objection to Probate." In it, she alleged that the will was invalid because Beard lacked testamentary capacity and was not of sound mind at the time he signed the will. The parties conducted no discovery, and the matter was tried before a special chancery court judge who was appointed after the local

---

[4] Apparently, Good Hope was acting as a result of a timber deed Diane had executed.

3

chancery court judge recused himself.

¶8.     At the October 9, 2019 trial, Antonio and Diane testified to the facts above. Antonio also testified that he was familiar with Beard's signature and that the signature on the will was Beard's. Antonio identified Beard's signature on a "Marital Agreement As To Property" that Beard had signed. That document was entered into evidence. Diane testified that at the time of the execution of the will in 1987 when Beard was sixty-five, he knew who she was, and he conducted his own affairs. No doctor had ever said Beard's mind was not sound. Further, she agreed that the signature of the testator on the will was Beard's. In addition, when questioned whether she made a diligent attempt to locate a will as she alleged in her petitions for administration of the estate, Diane said she had not.

¶9.     Because the subscribing witnesses were both deceased at the time of the trial,[5] Antonio called Durwood Breeland, a local attorney, to testify about the will's witnesses. Breeland knew Jones Sr. and Jones Jr., who had both practiced law as well. Jones Sr. was older than Breeland but Breeland testified that he was familiar with both of their signatures. Breeland also authenticated various documents, including a lease agreement, an accounting in a conservatorship matter, a deed, and a deed of trust—all signed by Jones Jr. Breeland testified that the signatures on those documents were, in fact, Jones Jr.'s signatures. When shown Beard's will, Breeland verified that Jones Jr.'s signature was genuine. Although early in his testimony Breeland said that he was familiar with Jones Sr.'s signature, he was not asked to verify Jones Sr.'s signature on the will itself.

---

[5] Robert Jones Sr. had died on November 13, 2003, prior to the filing of the petition, and Robert Jones Jr. died after Antonio filed the petition.

¶10. At the end of the presentation of the evidence, the chancery court heard oral arguments from counsel. Diane's counsel argued that the will was defective because it had no separate attestation clause and that Antonio's attempt to probate Beard's will was barred by the four-year statute of limitations to challenge an estate. Antonio contended that there was no requirement that a separate attestation clause be included in a will. Moreover, he argued that Diane's admitted failing to make a diligent search and inquiry for a will made her petitions for administration of the estate fraudulent, and there is no statute of limitations to concealed fraud. Antonio also pointed out that Diane had not raised these issues as affirmative defenses in her answer to Antonio's petition. The chancery court ordered the parties to brief these issues and reserved its ruling.

¶11. After reviewing the parties' briefs, the chancery court judge signed an order on November 7, 2019, finding that "[t]here has been a failure to present required evidence of attestation of the purported will as required by Mississippi law. [*See*] *In re Estate of Holmes*, 101 So. 3d 1150 (Miss. 2012); [*see also* Miss. Code Ann.] § 91-5-1. The cause will therefore be dismissed." The chancery clerk entered the order on November 12, 2019. On December 3, 2019, Antonio filed a "Motion for Findings of Fact and Conclusions of Law." There is no indication that the chancery court entered an order on that motion. On December 9, 2019, Antonio filed his notice of appeal.

¶12. On appeal, Antonio raises one issue: whether he presented sufficient evidence to admit Beard's will to probate.

**Standard of Review**

5

¶13. "In reviewing a chancellor's findings, we employ an abuse-of-discretion standard of review." *Mays v. Zumwalt (In re Estate of Amburn)*, 301 So. 3d 737, 740 (¶7) (Miss. Ct. App. 2020) (quoting *Covington v. McDaniel (In re Estate of Necaise)*, 126 So. 3d 49, 56 (¶22) (Miss. Ct. App. 2013)). "This Court will not disturb a chancellor's findings of fact in a will contest unless the findings are clearly erroneous or manifestly wrong, or the chancellor applied an incorrect legal standard." *In re Estate of Amburn*, 301 So. 3d at 740 (¶7). "However, when considering a question of law, we employ a de novo standard of review." *Id.*

## Discussion

¶14. To support his argument that the evidence was sufficient to accept the will for probate, Antonio contends, in essence, that the will as written is self-authenticating. In other words, Antonio argues that because both the testator and witnesses are deceased, once their signatures are authenticated, the language of the last paragraph of the will meets all the requirements needed for its probate. Diane argues to the contrary, but she first contends that Antonio did not present this argument to the chancery court and is therefore barred from raising it on appeal.

### I. Procedural Bar

¶15. It is well settled that issues not presented to the trial court will not be considered on appeal. *City of Hattiesburg v. Precision Const. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) (quoting *Adams v. Bd. of Sup'rs of Union Cnty.*, 177 Miss. 403, 170 So. 684, 685 (1936)). The "trial judge cannot be put in error on a matter which was never presented to

6

him for decision." *Id.* (quoting *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988)). In *Precision Construction*, the City of Hattiesburg appealed a circuit court's modified affirmance of an arbitration award. *Id.* at 1092 (¶14). The City sought reconsideration of the award because of alleged miscalculations by the arbitrator, but the arbitrator denied the City's motion for reconsideration as untimely because it was filed outside the twenty-day time limit from the date of the written award. *Id*. at (¶11). On appeal, the City attempted to argue that the arbitrator's initial award was interlocutory and that the statutory twenty-day period only commenced when the arbitrator entered a final award. *Id*. at 1093 (¶16). But the City had not mentioned this issue in any motion or response. *Id*. at (¶17). We held that the City was barred from arguing the issue on appeal because the City never presented it to the circuit judge for decision. *Id*. at (¶18).

¶16.    In this case, the issue Antonio raises on appeal is whether there was sufficient evidence to support a probate of Beard's will. During the trial, Antonio presented evidence concerning the verification of some of the signatures on the will, which itself included some attesting language in the paragraph just above the testator's signature. In his post-trial memorandum, Antonio argued that there is no statutory requirement for an additional attestation clause and that the will itself and the testimony elicited was sufficient. On appeal, Antonio similarly argues that the will itself, along with the testimony of individuals familiar with the signatures, satisfies all the requirements to probate a will. The issue presented here is virtually the same as the one that he presented to the chancery court. It is not a new issue as in *Precision Construction*. Accordingly, Antonio is not barred from presenting his

7

arguments on this issue on appeal.

## II.     Sufficiency of Evidence for Admission of Will to Probate

¶17.     The statutory requirements for the formation of a valid will are found in Mississippi

Code Annotated section 91-5-1 (Rev. 2018):

> Every person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.

Drawing from the language above, the key elements of a valid will are that (1) the testator

is over age eighteen; (2) the testator is of "sound and disposing mind"; (3) the will is signed

by the testator or by someone at his direction; (4) and if not wholly written in the testator's

hand, then the will must be attested by two or more witnesses in the presence of the testator.

"[W]ills must be strictly construed in accordance with statutory requirements." *Murakami

v. Young (In re Last Will & Testament of Massingale)*, 199 So. 3d 710, 713 (¶12) (Miss. Ct.

App. 2016) (citing *Wilson v. Polite*, 218 So. 2d 843, 849 (Miss. 1969); *Estate of Regan v.

Estate of LeBlanc*, 179 So. 3d 1155, 1158-59 (¶11) (Miss. Ct. App. 2015)). "In compliance

with statutory requirements, a valid nonholographic will or codicil 'must be attested by two

or more credible witnesses in the presence of the testator.'" *Id.* In this case, Beard's non-

holographic will reflects that he signed it before two subscribing witnesses. Accordingly,

the document met the requirements of section 91-5-1.

¶18. Although the elements of a duly executed will are found in section 91-5-1, a separate statute, Mississippi Code Annotated section 91-7-7 (Rev. 2018) provides the requirements for *proving* the due execution of a will:

> The due execution of the will, whether heretofore or hereafter executed, must be proved by at least one (1) of the subscribing witnesses, if alive and competent to testify. *If none of the subscribing witnesses can be produced to prove the execution of the will, it may be established by proving the handwriting of a testator and of the subscribing witnesses to the will, or of some of them.* The execution of the will may be proved by affidavits of subscribing witnesses. The affidavits may be annexed to the will or may be a part of the will, and shall state the address of each subscribing witness. Such affidavits may be signed at the time that the will is executed.

(Emphasis added). The dissent correctly notes the enactment of a comparable statute in 1880.[6] Prior to that time, there was no statutory language that specifically addressed how to prove due execution of a will when witnesses were unavailable except to allow depositions of attesting witnesses.[7] The 1880 enactment also specifically noted the proof that could be presented when none of the subscribing witnesses could testify about the will's execution.

¶19. In this case, the chancery court relied on *In re Estate of Holmes* in finding that Antonio had failed to present sufficient evidence of the attestation of Beard's will. However, *Holmes* is inapplicable to the case at hand. In *Holmes*, 101 So. 2d at 1153 (¶13), the two subscribing witnesses who testified could not establish that the testator had asked them to sign as witnesses or that the testator was of sound mind when the will was signed.

---

[6] Rev. Code of the Statute Laws of the State of Miss. ch. 59, § 1963, 537 (1880).

[7] Rev. Code of the Statute Laws of the State of Miss. ch. 9, § 1100, 213-14 (1871).

9

Specifically, the supreme court said:

> [The attesting witness] asserted that she would not have signed the Will had
> she thought [the testatrix] did not understand what she was doing. While that
> may be true, it does not cure her failure actually to form an opinion about [the
> testatrix's] competency, which she testified—unequivocally—she did not do.
> And her failure to form an opinion—standing alone—is enough to invalidate
> the will because, as an attesting witness, she was required to satisfy herself that
> [the testatrix] possessed sound mind when she executed the Will. One may not
> witness a will in ignorance.

*Id*. at (¶14). *Holmes* dealt with the insufficiency of the testimony of the attesting witnesses,
not a situation where the attesting witnesses are deceased. If by referencing *Holmes*, the
chancery court was requiring that Antonio present testimony from the attesting witnesses or
someone present at the time the will was executed, the chancery court was clearly in error.
Section 91-7-7 does not require such testimony when the subscribing witnesses are both
dead.

¶20.    In fact, the statute is clear that when attesting witnesses are deceased and testimony
concerning the signatures contained in a will is provided, the will may be probated, saying:
"If none of the subscribing witnesses can be produced to prove the execution of the will, it
may be established by proving the handwriting of a testator and of the subscribing witnesses
to the will, *or of some of them.*" Miss. Code Ann. § 91-7-7 (emphasis added). The
Mississippi Supreme Court has held that proof of signatures is required when the witnesses
are deceased. In *Williams v. Morehead*, 116 Miss. 653, 77 So. 658, 660 (1918), the decedent
purportedly executed two wills, one in 1914 and another in 1915, before his death in 1916.
*Id*. at 658. The 1915 will was lost, and its proponents attempted to prove that it was duly
executed through oral witness testimony. *Id.* But the supreme court held that the testimony

10

presented was "far from being clear and satisfactory" to prove "a legally and validly executed and attested will[] under the requirements of our statutes." *Id.* at 659. The court found that there was no testimony verifying either the testator's signature or the signatures of the witnesses, so there was insufficient proof of the execution of the lost will. *Id.*

¶21. The supreme court applied this same principle that testimony authenticating signatures of those deceased on a will was sufficient and required for probate in *Estate of Willis v. Willis*, 207 So. 2d 348, 349 (Miss. 1968). In that case, a petitioner sought to probate a lost will, and the subscribing witnesses were both dead. *Id.* The supreme court reviewed the record and found that there was no testimony that either of the signatures of two attesting witnesses were genuine or that someone saw these witnesses sign the will. *Id.* at 349. In another case, *Gaston v. Gaston*, 358 So. 2d 376, 377 (Miss. 1978), the supreme court also upheld the refusal to probate a will because no witness testified to the execution of the will, that it was signed by testator, or that he was familiar with the handwriting of the witnesses and could authenticate the signatures.

¶22. Unlike these prior cases, the case before us raises the unique question of the meaning of the phrase "or of some of them" that follows the requirement in the section 91-7-7 that signatures be authenticated when witnesses are deceased. The statute does not address how many witnesses' signatures require authentication. Despite the fact that this phrase "or of some of them" has been included in the statute for over 120 years, there has been no case where an appellate court has been required to interpret the meaning of the phrase.[8] Because

---

[8] There has been dicta in other cases, such as *Willis*, 207 So. 2d at 349, that may indicate that the signatures of both attesting witnesses need to be verified. But that case is

11

"[t]he interpretation of a statute is a question of law, and the standard of review on appeal is de novo[,]" *Dancy v. State*, 287 So. 3d 931, 935-36 (¶14) (Miss. 2020), we now address it.

¶23.    "In considering a statute passed by the Legislature, the first question a court should decide is whether the statute is ambiguous.  If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 154 (¶12) (Miss. 2006).  In this case, the words "or of some of them" are simple and unambiguous.  They clearly refer to the signatures of the testator and the subscribing witnesses.  Section 91-7-7 clearly states that to prove due execution of the will, the handwriting of the testator must be authenticated.[9] Therefore, the logical conclusion is that the term "or of some of them" refers to the handwriting of the testator and the handwriting of at least one of the attesting witnesses.  Had the statute required authentication of the handwriting of all, or even two attesting witnesses, it would have so stated.  But it does not.  Accordingly, we hold that the phrase "or of some of them" means verification of the testator's handwriting *and* the handwriting of at least one of the attesting witnesses.

¶24.    The dissent contends that this interpretation of that phrase would allow a will to be

---

factually distinguishable from the case at hand.  In *Willis*, the court had no evidence of the genuineness of either of the two subscribing witnesses' signatures on the will, and it was not compelled to reach the issue here: the meaning of "or of some of them."

[9] "If none of the subscribing witnesses can be produced to prove the execution of the will, *it may be established by proving the handwriting of a testator **and** of the subscribing witnesses to the will, or of some of them*."  Miss. Code Ann. § 91-7-7 (emphasis added).

probated with testimony verifying only the witnesses' signatures and not the testator's. But this misreads our holding, which is consistent with section 91-7-7 and requires authentication of the testator's signature *in addition to* that of at least one of the witnesses. This is fully consistent with the dissent's position, to which we agree, that there can be more than one subscribing witness.

¶25.    We are mindful that the Legislature has granted to each citizen the right of testation, "the power by will to control from the grave what becomes of one's property[,]" and "where the testator has acted in conformity with our empowering statutory rules, his will is valid. It becomes in theory almost sacred and in practice judicially enforceable[.]" *Tinnin v. First United Bank of Miss.*, 502 So. 2d 659, 663 (Miss. 1987). We must seek "to allow the testator to have his way regarding the disposition of his property[.]" *Id.* If the dissent's interpretation of the phrase "or of some of them" were to be adopted, there may be instances where the wishes of a testator could be thwarted if his attesting witnesses die before the will is probated. For example, a testator without lawful heirs may write a will to leave his property to a charity. If the witnesses to his will all die before the will can be probated, and only the testator's and one witness's signature could be authenticated, the dissent's reading of the statute would bar the will from probate. The testator's property would escheat to the State and not to the intended beneficiary.[10] While these facts are clearly not present in this

---

[10] The dissent notes that the intentions of a testator can be thwarted anytime a court enforces any "legal requirement" for proving the validity of a will. We agree. Where we and the dissent disagree, however, is regarding the "legal requirement" that should be enforced. The dissent would require that the signatures of two attesting witnesses be authenticated; we hold that only one need be authenticated. We have merely clarified that legal requirement.

13

case, here Beard executed his will in conformity with the law, and Antonio authenticated not only Beard's signature but also the signature of one of the attesting witnesses. Beard's intentions should be honored. Therefore, since Antonio proved the authenticity of some of the signatures on the will, including the testator's, Antonio met his burden, and the will should have been admitted to probate.

**Conclusion**

¶26. Because Antonio proved the due execution of the will, the chancery court erred in finding that the proof was insufficient to probate the will. We hereby reverse the chancery court's ruling and remand for further probate proceedings.

¶27. **REVERSED AND REMANDED.**

 **BARNES, C.J., GREENLEE, WESTBROOKS AND McCARTY, JJ., CONCUR. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE, SMITH AND EMFINGER, JJ. CARLTON, P.J., NOT PARTICIPATING.**

 **WILSON, P.J., DISSENTING:**

¶28. The relevant facts and the dispositive legal issue in this case are straightforward. Luke Beard allegedly executed a will in 1987 in the presence of two witnesses, Robert Jones Jr. and Robert Jones Sr. Beard died in 2001. Beard's grandson, Antonio Christmas, testified that he found the will in 2003, but he made no attempt to probate it until 2018. By that time, Jones Sr. had died. When Antonio petitioned to probate the will, Jones Jr. was still alive, but he died prior to trial. Antonio did not preserve Jones Jr.'s testimony by deposition, affidavit, or otherwise. At trial, a local attorney testified that he recognized the signature of Jones Jr., and Antonio testified that he recognized Beard's signature. But no one testified regarding

14

Jones Sr.'s signature.

¶29.    Mississippi law provides that "[i]f none of the subscribing witnesses can be produced to prove the execution of the will, it may be established by proving the handwriting of a testator and of the subscribing witnesses to the will, *or of some of them*."  Miss. Code Ann. § 91-7-7 (Rev. 2018) (emphasis added).  The critical issue in this case is whether the pronoun "them" refers to "the subscribing witnesses" or refers collectively to the "testator and . . . the subscribing witnesses."  If "them" refers to "the subscribing witnesses," then Antonio failed to prove proper execution of the will because he only proved the handwriting of one of the subscribing witnesses (Jones Jr.), not "some of them."

¶30.    The Supreme Court has previously interpreted section 91-7-7's predecessor, which contained substantially identical language.  *Estate of Willis v. Willis*, 207 So. 2d 348, 349 (Miss. 1968) (interpreting Miss. Code 1942 Ann. § 498 (1956)).[11]  In *Willis*, the petitioners attempted to prove due execution of a lost will through two witnesses who testified that they had seen the will and "recognized the signature of testator" but "could not verify the signatures of the attesting witnesses." *Id.*  The Supreme Court held that the petitioners failed to prove due execution.  *Id.*  The Supreme Court stated that "[a]lthough under [the statute] the testimony of only one living witness is sufficient to establish a will's proper execution, *proof of two signatures of witnesses is required to prove due execution where the witnesses*

_____

[11] Substantially similar language has been in Mississippi law since at least 1880.  *See* Rev. Code of the Statute Laws of the State of Miss. ch. 59, § 1963 (1880).

15

*to a will are deceased*." *Id.* (emphasis added).[12]

¶31. If the Supreme Court's opinion in *Willis* correctly states the law, it is dispositive in this case because Antonio offered proof of the signature of only one witness, not two. However, the majority says that *Willis*'s on-point statement is "dicta" because *Willis* "is factually distinguishable" and because the proponents in that case failed to prove the signature of even one subscribing witness. *Ante* at n.8. I respectfully disagree. In *Willis*, just as in this case, the proponents proved the signature of the testator. *Willis*, 207 So. 2d at 349. However, after quoting the relevant statutory language, the Supreme Court held that the proponents could not establish the proper execution of the will because the statute requires "proof of *two* signatures of [subscribing] witnesses" when, as in this case, all subscribing "witnesses to [the] will are deceased." *Id.* (emphasis added). This clearly stated reason for the Supreme Court's decision is not "dicta" just because the Court could have reached the same result on some other rationale. We should follow the Supreme Court's interpretation of the statute rather than dismissing it as dicta, and we should affirm the chancery court because Antonio failed to prove the handwriting of two subscribing witnesses.

¶32. But even assuming for the sake of argument that *Willis* is not controlling, the best reading of the statute is that it requires proof of the signatures of at least two of the

---

[12] *See also* Robert E. Williford & Samuel H. Williford, *Mississippi Probate and Estate Administration* § 2:2 (3d ed. 2003) (stating that when an attesting witness cannot be produced to prove the execution of the will, "proof of the signatures of two witnesses is required to prove due execution" (citing *Willis*)); Robert A. Weems, *Wills and Administration of Estates in Mississippi* § 7:10 (3d ed. 2003) (stating that when an attesting witness cannot be produced to prove the execution of the will, the proponent must "prove that the signatures on the will purporting to be those of the testator and the subscribing witnesses are the genuine signatures of those people" (citing *Willis*)).

16

subscribing witnesses.[13]  A significant difficulty with the majority's interpretation of the statute is that it would allow the proponent to establish proper execution of the will without the testimony of any subscribing witness and without any proof of the authenticity of the testator's signature.  The majority asserts that "the words 'or of some of them' are simple and unambiguous" and "clearly refer to the signatures of the testator and the subscribing witnesses."  *Ante* at ¶23.  If "or of some of them" refers collectively to the testator and the subscribing witnesses, then proof of the handwriting of *any two persons from that collective group* will suffice—whether it be the testator and a witness or just two witnesses.[14]  It seems unlikely that the Legislature intended for a will to be proved without the testimony of a single

_____

[13] Mississippi law requires only two subscribing witnesses to a non-holographic will, but there may be more than two witnesses.  *See, e.g.*, Gerry W. Beyer, *Will Contests — Prediction and Prevention*, 4 Est. Plan. & Cmty. Prop. L.J. 1, 40 (2011) (explaining that "extra witnesses," also known as "supernumerary witnesses," "may be advisable" because they "provide a greater pool of individuals who may be alive, available, and able to recollect the ceremony and the testator's condition").  In addition, prior to November 1880, Mississippi law required three witnesses for a non-holographic will that devised real estate.  *See Swanzy v. Kolb*, 94 Miss. 10, 13, 46 So. 549, 549 (1908) (applying the three-witness requirement to the will of a testator who died in June 1880).  Effective November 1, 1880, Mississippi law was amended to require "two or more credible witnesses" for all non-holographic wills, including wills that devised real property.  Rev. Code of the Statute Laws of the State of Miss. ch. 46, § 1262 (1880); *see id.* ch. 1, §§ 2-3 (providing that the Code would take effect on November 1, 1880).  As noted above, the statutory language now found in section 91-7-7 was also enacted in 1880.  *See id.* ch. 59, § 1963 (1880).  Therefore, at the time the Legislature adopted this language, many existing wills would have had more than two subscribing witnesses.

[14] Although the majority denies that this is its "holding," *ante* at ¶24, it is a clear and logical consequence of the majority's interpretation of the statute.  If "them" is a collective group that includes both the testator and multiple subscribing witnesses, then it necessarily follows that "some of them" (a subset of that collective group) need not include the testator.  If that is not what the majority holds, then it is not interpreting the actual language of the statute but just making up a new rule out of whole cloth.

subscribing witness or even some proof of the authenticity of the testator's signature.

¶33.    The language of section 91-7-7 could be clearer, which is not surprising since it has not been updated in over 140 years. However, the better reading of the statute is that—in the absence of the testimony of at least one subscribing witness—the proponent of the will must prove the handwriting of the testator and at least two subscribing witnesses. Miss. Code Ann. § 91-7-7. Indeed, our Supreme Court previously adopted this interpretation of the statute, stating that "[a]lthough under [the statute] the testimony of only one living witness is sufficient to establish a will's proper execution, proof of two signatures of witnesses is required to prove due execution where the witnesses to a will are deceased." *Willis*, 207 So. 2d at 349. Because Antonio offered proof of the signature of only one of the subscribing witnesses, the chancery court did not err by denying Antonio's petition to probate the purported will.

¶34.    If that result seems harsh, it is important to keep in mind that Antonio could have avoided this problem if he had petitioned to probate the will when he found it in 2003. Instead, he told no one about the will and did nothing for fifteen years. "As a matter of public policy and at common law a person in possession of a will, after testator's death, has a duty to produce and file it with the proper parties or court." *In re Will of Wilcher*, 994 So. 2d 170, 175 (¶10) (Miss. 2008) (quoting *In re Stoball's Estate*, 211 Miss. 15, 26, 50 So. 2d 635, 639 (1951)). This case illustrates why we have such a policy.[15]

___

[15] The majority says that "[i]f the dissent's interpretation of the phrase 'or of some of them' were to be adopted, there may be instances where the wishes of a testator could be thwarted if his attesting witnesses die before the will is probated." *Ante* at ¶25. True enough, that may happen. That may happen *anytime* a court enforces any legal requirement

18

¶35.    For the foregoing reasons, I would affirm the judgment of the chancery court, and I respectfully dissent.[16]

**LAWRENCE, SMITH AND EMFINGER, JJ., JOIN THIS OPINION.**

---

for proving a will. Indeed, *under the majority's own interpretation of the statute*, "there may be instances where the wishes of a testator could be thwarted." If the proponents cannot prove two signatures, then—under the majority's interpretation—"there may be instances where the wishes of a testator could be thwarted." Again, that may happen *anytime* we enforce *any* legal requirement for proving a will. The only difference between the majority and this dissent is which signatures must be proven.

[16] Diane Christmas also argues that there is insufficient evidence that Jones Sr. and Jones Jr. "attested" the will because they did not sign an "attestation clause" and because there is no other evidence of the circumstances of the will's execution. *See In re Estate of Holmes*, 101 So. 3d 1150, 1152 (¶10) (Miss. 2012) (summarizing the "four requirements" of an attesting witness under Mississippi law); Weems, *supra*, § 4:13 (discussing attestation clauses). However, because Antonio presented no evidence of Jones Sr.'s handwriting, I conclude that it is unnecessary to address the sufficiency of the evidence of attestation.